IN THE CIRCUIT COURT
FOURTH JUDICIAL CIRCUIT
DUVAL COUNTY, FLORIDA

**HARRY BRILL and PATRICIA BRILL,**

Plaintiffs,

- against -

**DAVOL, INC., and C.R. BARD, INC.**

Defendants.

-----------------------------------------------------/

**CASE NO.:**
**DIVISION:** 001193 -XXXX-MA

**DIVISION CV-G**

## VERIFIED COMPLAINT

Plaintiffs, **HARRY BRILL and PATRICIA BRILL**, complaining of the Defendants, by their attorneys, **WILNER BLOCK, P.A.** upon information and belief, allege as follows:

## NATURE OF THE CASE

1) This action is brought on behalf of Plaintiff, **HARRY BRILL**, who received the Bard® Composix® E/X Mesh Hernia Repair Patch (hereinafter collectively referred to as the "E/X Mesh Hernia Patch") and his spouse, **PATRICIA BRILL.**

2) Defendant, **DAVOL INC. ("DAVOL")** is a corporation that is incorporated under the laws of the State of Rhode Island. **DAVOL** has its principal place of business in the State of Rhode Island. It manufactures, inter alia, the E/X Mesh Hernia Patch, at 100 Sockanosset Crossroad, Cranston, Rhode Island. **DAVOL** focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3) Defendant, **C. R. BARD INC. ("BARD")** is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of **DAVOL** and participates in the manufacture and distribution of the E/X Mesh Hernia Patch. It also

manufactures and supplies **DAVOL** with material that forms part of the E/X Mesh Hernia Patch. **BARD** at all times relevant did substantial and continuous business in the State of Rhode Island.

4) Defendants, **DAVOL, INC. and C.R. BARD, INC.,** (hereinafter collectively referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the E/X Mesh Hernia Patch for use in repairing ventral and incisional hernias.

5) As a result of the defective nature of the E/X Mesh Hernia Patch, those persons who received and/or rely on the E/X Mesh Hernia Patch have suffered and/or are at an increased risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, and/or such other side effects as serious infection, the need for additional surgery to remove and/or replace the defective product, and/or the need for subsequent surgery to repair perforations caused by the defective product, as well as other severe and permanent health consequences as a result of their defective product.

6) Defendants concealed their knowledge of the defects in their products from the Plaintiffs, including HARRY BRILL, and their physicians, hospitals, and the FDA.

7) Consequently, Plaintiffs herein seek compensatory damages as a result of their use of the E/X Mesh Hernia Patch, which has caused Plaintiffs to suffer physical pain, mental anguish, and to incur medical and other expenses.

8) Defendant **DAVOL** designed, manufactured, marketed, distributed, sold and delivered the E/X Mesh Hernia Patch that was implanted into Plaintiff HARRY BRILL's body.

9) Defendant **DAVOL,** through its agents, servants and employees, participated in the

design, manufacture, marketing, distribution, sale and/or delivery of the E/X Mesh Hernia Patch that was implanted into Plaintiff HARRY BRILL's body.

10) The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on August 25, 2000. Following the submission of the 510k Application the E/X Mesh Hernia Patch was approved by the FDA as a Class II medical device on October 11, 2000.

## PARTY PLAINTIFFS

11) Plaintiff, **HARRY BRILL**, is a citizen of the United States of America, currently residing at 729 Inverie Drive, Inverness, Florida 34453.

12) Plaintiff, **HARRY BRILL**, was born on March 7, 1936.

13) On or about January 14, 2004, Plaintiff, **HARRY BRILL**, underwent surgery to repair a ventral hernia. An E/X Mesh Hernia Patch was used to repair the defect.

14) As result of using Defendants' E/X Mesh Hernia Patch, Plaintiff, **HARRY BRILL**, was caused to suffer, among other injuries, severe infection and was hospitalized and caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

15) On or about January 26, 2004, Plaintiff, **HARRY BRILL**, was hospitalized and forced to undergo emergency surgery to remove the E/X Mesh Hernia Patch.

16) The severe infection sustained by Plaintiff, **HARRY BRILL**, was due to the Defendants' E/X Mesh Hernia Patch.

## FACTUAL BACKGROUND

17) At all relevant times, Defendants, **DAVOL., INC., and C.R. BARD** were in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the E/X Mesh Hernia Patch for use in repairing ventral and incisional hernias.

18) Upon information and belief, Defendant, **DAVOL, INC**. was acquired by Defendant, **C.R. BARD, INC**., in 1980, at which point **DAVOL, INC**. became a wholly-owned subsidiary of Defendant, **C.R. BARD, INC.**

19) Upon information and belief, Defendants had sales in 2004 from their Surgical Specialties segment of business, which includes the E/X Mesh Hernia Patch, in excess of three hundred and thirteen million dollars ($313,000,000).

20) Upon information and belief, Defendants had sales in 2005 from their Surgical Specialties segment of business, which includes the E/X Mesh Hernia Patch, in excess of three hundred and thirty million dollars ($330,000,000).

21) Upon information and belief, Defendants had sales in 2006 from their Surgical Specialties segment of business, which includes the E/X Mesh Hernia Patch, in excess of three hundred and fifty-seven million dollars ($357,000,000).

22) Upon information and belief, Defendants are in the market for ventral and incisional hernia repair products.

23) Upon information and belief, the E/X Mesh Hernia Patch was originally approved for sale and use by the FDA on or about October 11, 2000. The FDA's decision for approval was based upon the information provided to them by the Defendants as to the safety and efficacy of the E/X Mesh Hernia Patch.

24) Upon information and belief, Defendants introduced the E/X Mesh Hernia Patch to the market on or about October 11, 2000.

25) Upon information and belief, Defendants' E/X Mesh Hernia Patch is manufactured from a single layer of knitted prolypopylene monofilament, a single layer of expanded polytetrafluoroethylene (ePTFE) attached to the mesh with polytetrafluoroethylene

(PTFE) monofilament thread and heat sealed to the peripheral edge of the polypropylene mesh and to the ePTFE layer, which is used to repair ventral and incisional hernias. The alleged intended use of the E/X Mesh Hernia Patch, is for the reconstruction of soft tissue deficiencies, such as hernias. The E/X Mesh Hernia Patch's alleged purpose, once it is inside, is to allegedly promote through its two distinctly different sides, ingrowth and sub-micronic ePTFE to minimize adhesions to the prostheis, which allegedly reduces the risk of recurrent hernias.

26) Upon information and belief, Defendants did not have adequate and appropriate systems in place to collect and analyze any of the complaints they received from doctors, hospitals, and/or patients concerning the E/X Mesh Hernia Patch, as required by the FDA, thus leading to inconsistencies and irregularities in the way Defendants kept track of complaints they received regarding the failure of the E/X Mesh Hernia Patch.

27) Upon information and belief, Defendants knew, or should have known, of the seriousness of the risks of using the E/X Mesh Hernia Patch based upon the state of knowledge of the E/X Mesh Hernia Patch as it existed at that time, and upon generally accepted medical and research standards and principles.

28) Upon information and belief, Defendants knew, or should have known, of the seriousness of the risks of using the E/X Mesh Hernia Patch based upon the complaints they received from doctors, hospitals, and/or patients who used the E/X Mesh Hernia Patch demonstrating that the product was defective.

29) Upon information and belief, Defendants failed to send the necessary product failure reports to the FDA, as required by the FDA, indicating that the E/X Mesh Hernia Patch was causing serious and fatal injuries in persons who used the E/X Mesh Hernia Patch.

30) Defendants failed to appropriately and adequately warn Plaintiffs and their physicians, hospitals, and the FDA, of the serious and dangerous risks involved in using Defendants' E/X Mesh Hernia Patch, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

31) Upon information and belief, Defendants misrepresented the known risks inherent in the use of the E/X Mesh Hernia Patch.

32) Defendants made certain claims which were distributed and circulated to the medical and healthcare professions that the E/X Mesh Hernia Patch was safe.

33) Defendants were careless and negligent in the manufacturing, testing, selling, distribution, merchandising, advertising, marketing, promotion, compounding, packaging, fabrication, warning, analyzing, marketing, and recommendation of the E/X Mesh Hernia Patch.

34) By reason of the foregoing, Plaintiffs, including **HARRY BRILL**, have suffered and/or are at extremely high risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and/or replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

35) Plaintiffs, including **HARRY BRILL**, have endured and continue to suffer the mental anguish and psychological trauma of living with the knowledge that they have suffered and/or may suffer serious dangerous side effects.

36) By reason of the foregoing, Plaintiffs, including, **HARRY BRILL and PATRICIA BRILL**, have been severely and permanently injured.

**FIRST CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (NEGLIGENCE AND NEGLIGENCE PER SE)**

37) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

38) Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of the E/X Mesh Hernia Patch into the stream of commerce, including a duty to ensure that the product did not cause users to suffer from unreasonable, dangerous side effects.

39) Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of the E/X Mesh Hernia Patch into the interstate commerce, in that Defendants knew or should have known that using the E/X Mesh Hernia Patch created a high risk of unreasonable and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and/or replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

40) The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a) Manufacturing, producing, promoting, formulating, creating, and/or designing the E/X Mesh Hernia Patch without thoroughly testing it;

b) Manufacturing, producing, promoting, formulating, creating, and/or designing the E/X Mesh Hernia Patch without adequately testing it;

c) Not conducting sufficient testing programs to determine whether or not the aforesaid E/X Mesh Hernia Patch was safe for use; in that Defendants herein knew or should have known that the E/X Mesh Hernia Patch was unsafe and unfit for use by reason of the dangers to its users;

d) Selling the E/X Mesh Hernia Patch without making proper and sufficient tests to determine the dangers to its users;

e) Negligently failing to adequately and correctly warn the Plaintiffs, the public, the medical and healthcare profession, and the FDA of the dangers of the E/X Mesh Hernia Patch;

f) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with and use the E/X Mesh Hernia Patch;

g) Failing to test the E/X Mesh Hernia Patch;

h) Negligently advertising and recommending the use of the aforesaid E/X Mesh Hernia Patch without sufficient knowledge as to its dangerous propensities;

i) Negligently representing that said E/X Mesh Hernia Patch was safe for use for their intended purpose, when, in fact, it was unsafe;

j) Negligently designing the E/X Mesh Hernia Patch in a manner which was dangerous to its users;

k) Negligently manufacturing the E/X Mesh Hernia Patch in a manner which was dangerous to its users;

l) Negligently producing the E/X Mesh Hernia Patch in a manner which was dangerous to its users;

41) Negligently assembling the E/X Mesh Hernia Patch in a manner which was dangerous to its users; and

42) Improperly concealing information concerning FDA warnings from the Plaintiffs, including, **HARRY BRILL**, healthcare professionals, and/or the FDA in knowing that the E/X Mesh Hernia Patch was unsafe, dangerous, and/or non-conforming with FDA regulations.

43) Defendants violated statutes, rules and ordinates concerning the manufacturing, marketing, and/or testing of their product.

44) Defendants under-reported, underestimated and/or downplayed the serious dangers of the E/X Mesh Hernia Patch.

45) Defendants were negligent in the designing, researching, supplying, manufacture, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the E/X Mesh Hernia Patch in that they:

a) Failed to use due care in designing and manufacturing the E/X Mesh Hernia Patch so as to avoid the aforementioned risks to individuals when the E/X Mesh Hernia Patch was used to repair ventral and incisional hernias;

b) Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse risks and side effects associated with the use of the E/X Mesh Hernia Patch;

c) Failed to accompany their product with proper warnings regarding all possible adverse risks and side effects concerning the failure and/or malfunction of the E/X Mesh Hernia Patch;

d) Failed to warn Plaintiffs, including **HARRY BRILL**, of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

e) Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the E/X Mesh Hernia Patch;

f) Failed to warn Plaintiffs prior to actively encouraging the sale of the E/X Mesh Hernia Patch, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

g) Were otherwise careless or negligent.

46) Defendants knew or should have known that consumers such as the Plaintiff **HARRY BRILL** would forseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

47) Defendants' actions, by violating statutes, ordinances and/or rules and regulations, constituted negligence per se.

48) Defendants' negligence was the proximate cause of Plaintiffs' injuries, harm, and economic loss, which they suffered and/or will continue to suffer.

49) As a direct and proximate result of the foregoing negligence of Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities

50) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and/or replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

51) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

52) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**SECOND CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (STRICT PRODUCTS LIABILITY)**

53) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

54) At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the E/X Mesh Hernia Patch as hereinabove described and Plaintiff was a recipient of said product.

55) That the E/X Mesh Hernia Patch was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

56) At those times, the E/X Mesh Hernia Patch was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, to the Plaintiffs herein.

57) The E/X Mesh Hernia Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of the E/X Mesh Hernia Patch.

58) The E/X Mesh Hernia Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants manufacturers and/or

suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

59) At all times herein mentioned, the E/X Mesh Hernia Patch was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants.

60) Defendants knew, or should have known that at all times herein mentioned, the E/X Mesh Hernia Patch was in a defective condition, and was inherently dangerous and unsafe.

61) At the time of the Plaintiff **HARRY BRILL**'s receipt and/or use of the E/X Mesh Hernia Patch, the E/X Mesh Hernia Patch was being used for the purposes and in a manner normally intended, namely for the repair of ventral and incisional hernias.

62) Defendants, with this knowledge, voluntarily designed the E/X Mesh Hernia Patch in a dangerous condition for use by the public, and in particular the Plaintiffs.

63) Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

64) Defendants created a product unreasonably dangerous for its normal, intended use.

65) The E/X Mesh Hernia Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that said E/X Mesh Hernia Patch left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

66) The E/X Mesh Hernia Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' E/X Mesh Hernia Patch was manufactured.

67) Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff, **HARRY BRILL**, in particular. Because of this flagrant disregard for human life, Defendants are therefore strictly liable for the injuries sustained by the Plaintiff, **HARRY BRILL**.

68) Plaintiff, **HARRY BRILL**, could not, by the exercise of reasonable care, have discovered the defects herein mentioned and perceived their danger.

69) The E/X Mesh Hernia Patch, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions because the manufacturer knew or should have known that the product created a risk of unreasonable, dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, well as other severe and permanent health consequences, and/or the Defendants failed to adequately warn of said risk.

70) The E/X Mesh Hernia Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

71) The E/X Mesh Hernia Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after the manufacturer knew or should have known of the unreasonable, dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious

infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences, and Defendants failed to provide adequate warnings to users or consumers of the product, and continued to promote the product.

72) By reason of the foregoing, the Defendants have become strictly liable in tort to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, the E/X Mesh Hernia Patch.

73) Defendants' defective design, manufacturing defect, and inadequate warnings of the E/X Mesh Hernia Patch were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

74) That said defects in Defendants' E/X Mesh Hernia Patch were a substantial factor in causing Plaintiff **HARRY BRILL**'s injuries.

75) As a direct and proximate result of the foregoing defective design, manufacturing defect, and inadequate warnings of Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities

76) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and replace the E/X

Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

77) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

78) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**THIRD CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (BREACH OF EXPRESS WARRANTY)**

79) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

80) Defendants expressly warranted that the E/X Mesh Hernia Patch was safe and/or well accepted by users.

81) The E/X Mesh Hernia Patch does not conform to these express representations because the E/X Mesh Hernia Patch is not safe and has numerous serious risks and side effects. As a direct and proximate result of the breach of said warranties, Plaintiffs, including **HARRY BRILL**, have suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

82) Plaintiff did rely on the express warranties of the Defendants herein.

83) Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of

the E/X Mesh Hernia Patch.

84) The Defendants herein breached the aforesaid express warranties, as their E/X Mesh Hernia Patches were defective.

85) Defendants expressly represented to the users, their physicians, healthcare providers, and the FDA that the E/X Mesh Hernia Patch was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

86) Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the E/X Mesh Hernia Patch was not safe and not fit for the use intended, and, in fact, produced serious injuries to the users.

87) As a direct and proximate result of the foregoing breach of express warranty by Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities

88) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

89) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

90) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**FOURTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (BREACH OF IMPLIED WARRANTIES)**

91) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

92) At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the E/X Mesh Hernia Patch, which is used for repairing ventral and incisional hernias.

93) At the time Defendants marketed, sold, and distributed the E/X Mesh Hernia Patch for use by Plaintiff, Defendants knew of the use for which the E/X Mesh Hernia Patch was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

94) The Defendants impliedly represented and warranted to the users and their physicians, healthcare providers, and the FDA that the E/X Mesh Hernia Patch was safe and of merchantable quality, and fit for the ordinary purpose for which said product was to be used.

95) That said representations and warranties aforementioned were false, misleading, and inaccurate in that the E/X Mesh Hernia Patch was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

96) Plaintiff and members of the medical community did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

97) Plaintiff and his physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether the E/X Mesh Hernia Patch was of merchantable quality and safe and fit for its intended use.

98) The E/X Mesh Hernia Patch was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

99) The Defendants herein breached the aforesaid implied warranties, as their E/X Mesh Hernia Patches were not fit for their intended purposes and uses.

100) As a direct and proximate result of the foregoing breech of implied warranty by Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities

101) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including

but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

102) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

103) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**FIFTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (FRAUDULENT MISREPRESENTATION)**

104) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

105) The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiffs, the FDA, and the public in general, that said product, the E/X Mesh Hernia Patch, had been tested and found to be safe and effective for its intended use in repairing ventral and incisional hernias.

106) The representations made by Defendants were, in fact, false.

107) When said representations were made by Defendants, they knew the representations to be false, and they willfully, wantonly and recklessly disregarded whether the representations were true.

108) These representations were made by said Defendants with the intent of defrauding and deceiving Plaintiff, **HARRY BRILL**, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend and use said product, the E/X Mesh Hernia Patch, in repairing ventral and incisional hernias, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

109) At the time the aforesaid representations were made by the Defendants and, at the time that the Plaintiff used the E/X Mesh Hernia Patch, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

110) In reliance upon said representations, the Plaintiff was induced to and did use the E/X Mesh Hernia Patch, thereby sustaining severe and permanent personal injuries.

111) Said Defendants knew and were aware or should have known that the E/X Mesh Hernia Patch had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

112) Defendants knew or should have known that the E/X Mesh Hernia Patch had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous.

113) Defendants brought the E/X Mesh Hernia Patch to the market, and acted fraudulently, wantonly and maliciously to the detriment of Plaintiff **HARRY BRILL**.

114) As a direct and proximate result of the foregoing fraudulent misrepresentation of Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical

pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities.

115) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

116) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

117) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**SIXTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (FRAUDULENT CONCEALMENT)**

118) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

119) At all times during the course of dealing between Defendants and Plaintiff, Defendants misrepresented that the E/X Mesh Hernia Patch was safe for its intended use.

120) Defendants knew or were reckless in not knowing that its representations were false.

121) In their representations to Plaintiffs, including **HARRY BRILL**, the FDA and healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

a) that the E/X Mesh Hernia Patch was not safe for repairing ventral and incisional hernias;

b) that the risk of serious injury and side effects with the E/X Mesh Hernia Patch were not adequately tested by Defendants;

c) that Defendants were aware of dangers with the E/X Mesh Hernia Patch;

d) that the E/X Mesh Hernia Patch was defective, and that it caused dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death and/or serious infections, as well as other severe and permanent health consequences;

e) that patients needed to be monitored more regularly than normal while using the E/X Mesh Hernia Patch;

f) that the E/X Mesh Hernia Patch was manufactured negligently;

g) that the E/X Mesh Hernia Patch was manufactured defectively;

h) that the E/X Mesh Hernia Patch was manufactured improperly;

i) that the E/X Mesh Hernia Patch was designed negligently;

j) that the E/X Mesh Hernia Patch was designed defectively; and

k) that the E/X Mesh Hernia Patch was designed improperly.

122) Defendants were under a duty to disclose to Plaintiffs, including **HARRY BRILL,** and their physicians, hospitals, healthcare providers, and the FDA the defective nature of the E/X Mesh Hernia Patch.

123) Defendants had sole access to material facts concerning the defective nature of the E/X Mesh Hernia Patch and its propensity to cause serious and dangerous side effects, and

hence, cause damage to persons who used the E/X Mesh Hernia Patch, including the Plaintiff.

124) Defendants' concealment and omissions of material facts concerning, inter alia, the safety of the E/X Mesh Hernia Patch was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff **HARRY BRILL**, and his physicians, hospitals and healthcare providers into reliance on and use of the E/X Mesh Hernia Patch.

125) Defendants knew that Plaintiffs, including **HARRY BRILL**, and their physicians, hospitals, healthcare providers, and the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the E/X Mesh Hernia Patch, as set forth herein.

126) Plaintiff, as well as his doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposely did not include facts that were concealed and/or omitted by Defendants.

127) As a direct and proximate result of the foregoing fraudulent concealment of Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities.

128) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae,

death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

129) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

130) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**SEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (NEGLIGENT MISREPRESENTATION)**

131) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

132) Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiffs, including **HARRY BRILL**, the FDA and the public in general that said product, the E/X Mesh Hernia Patch, had been tested and found to be safe and effective for repairing ventral and incisional hernias.

133) The representations made by Defendants were, in fact, false.

134) Defendants failed to exercise ordinary care in the representation of the E/X Mesh Hernia Patch, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented the E/X Mesh Hernia Patch's high risk of unreasonable, dangerous side effects.

135) Defendants breached their duty in representing the E/X Mesh Hernia Patch's serious side effects to the medical and healthcare community, to Plaintiff, the FDA and the public in general.

136) As a direct and proximate result of the foregoing negligent misrepresentation of Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities.

137) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

138) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

139) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**EIGHTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS, C.R. BARD, and DAVOL., INC. (FRAUD AND DECEIT)**

140) Plaintiffs repeat, reiterate, and reallege each and every allegation of this

141) Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

142) Defendants conducted research and used the E/X Mesh Hernia Patch as part of said research.

143) As a result of Defendants' research and testing, or lack thereof, Defendants distributed blatantly and intentionally false information, including but not limited to assuring the public, the Plaintiff, his doctors, hospitals, healthcare professionals, and the FDA that the E/X Mesh Hernia Patch was safe to use as a means of repairing ventral and incisional hernias.

144) As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiff herein.

145) Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as his respective healthcare providers and/or the FDA.

146) The information distributed to the public, the FDA and the Plaintiff, by Defendants, including but not limited to reports and press releases, contained material representations of fact and/or admissions.

147) The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included representations that Defendants' E/X Mesh Hernia Patch was safe for use in repairing ventral and incisional hernias.

148) The information distributed to the public, the FDA, and the Plaintiff, by Defendants

intentionally included false representations that the E/X Mesh Hernia Patch was not injurious to the health and/or safety of its intended users.

149) These representations were false and misleading.

150) Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the E/X Mesh Hernia Patch was not safe as a means of repairing ventral and incisional hernias.

151) Defendants intentionally made material representations to the FDA and the public, including the medical profession and the Plaintiff regarding the safety of the E/X Mesh Hernia Patch, specifically but not limited to the E/X Mesh Hernia Patch not having dangerous and serious health and/or safety concerns.

152) That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and the Plaintiff, to gain the confidence of the public, the FDA, and the Plaintiff, to falsely ensure the quality and fitness for use of the E/X Mesh Hernia Patch and induce the public, and the Plaintiff to use the E/X Mesh Hernia Patch.

153) Defendants made the aforementioned false claims and false representations with the intent of convincing the public, the FDA, and the Plaintiff, that E/X Mesh Hernia Patch was fit and safe for use in repairing ventral and incisional hernias.

154) That Defendants made claims and representations in its documents submitted to the FDA, to the public, and the Plaintiff, that the E/X Mesh Hernia Patch did not present serious health and/or safety risks.

155) That these representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist,

and/or were made recklessly and without regard to the actual facts.

156) That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff, and were made in order to induce the Plaintiff to rely upon misrepresentations and caused the Plaintiffs to use and rely on the E/X Mesh Hernia Patch.

157) That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the E/X Mesh Hernia Patch to the public at large, the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective.

158) That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of the E/X Mesh Hernia Patch by concealing the suppressing material facts regarding the dangerous and serious health and/or safety concerns of the E/X Mesh Hernia Patch.

159) That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff into a sense of security so that Plaintiff would rely on the representations and purchase, use, and rely on the E/X Mesh Hernia Patch and/or that their respective healthcare providers would do the same.

160) Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff, would rely upon the information being disseminated.

161) That the Plaintiff did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior

knowledge of hernia repair patches, and were thereby induced to purchase, use and rely on Defendants' E/X Mesh Hernia Patch.

162) That at the time the representations were made, the Plaintiff did not know the truth with regard to the dangerous and serious health and/or safety concerns of the E/X Mesh Hernia Patch.

163) That the Plaintiffs did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiffs, with reasonable diligence, have discovered the true facts.

164) That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of the E/X Mesh Hernia Patch, Plaintiff would not have used and/or relied on Defendants' E/X Mesh Hernia Patch.

165) That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly, and/or purposefully on the Plaintiff.

166) As a direct and proximate result of the foregoing fraud and deceit by Defendants, **C.R. BARD and DAVOL., INC.**, Plaintiff, **HARRY BRILL**, sustained serious and permanent personal injuries, and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from her regular activities, including but not limited to social and economic activities.

167) As a result of the foregoing acts and omissions, the Plaintiff was/is caused to suffer and/or is at a greatly increased risk of suffering serious, dangerous side effects, including but not limited to, bowel perforations, bowel obstructions, chronic intestinal fistulae,

death, serious infection, the need for additional surgery to remove and replace the E/X Mesh Hernia Patch, and/or the need for additional surgery, as well as other severe and permanent health consequences.

168) As a result of the foregoing acts and omissions, the Plaintiff, **HARRY BRILL**, requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

169) By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the Sum of TEN MILLION DOLLARS ($10,000,000.00).

**NINTH CAUSE OF ACTION AS AGAINST ALL THE DEFENDANTS (LOSS OF CONSORTIUM)**

170) Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

171) Plaintiff, **PATRICIA BRILL**, is lawfully married to Plaintiff, **HARRY BRILL**, and as such is entitled to the services, society and companionship of her spouse, the Plaintiff, **HARRY BRILL**.

172) That as a result of the foregoing, Plaintiff, **PATRICIA BRILL**, was caused to sustain the loss of services, income, society, consortium and companionship of her spouse during his time of injury and continuing thereafter, caused by Defendants' E/X Mesh Hernia Patch, and was caused to incur other medical expenses on behalf of her spouse.

173) As a result Plaintiffs, have been damaged in the sum of TEN MILLION DOLLARS ($10,000,000.00), not including punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

1) Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

2) Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

3) Awarding Plaintiffs reasonable attorneys fees;

4) Awarding Plaintiffs the costs of these proceedings; and

5) Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.

Dated: January 25, 2008

**WILNER BLOCK, P.A.**

**STEPHANIE J. HARTLEY, ESQ.**
Florida Bar No.: 0997846
3127 Atlantic Blvd., Suite 3
Jacksonville, FL 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
Email: shartley@wilnerblock.com